1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

9
10
11

GREGORIO NUGUID, an individual;

Plaintiff,

v.

MERCEDES-BENZ USA, LLC, a Delaware limited liability company; and DOES 1 through 10,

Defendant.

Case No.:  3:21-cv-00435-BEN-BLM

**ORDER:**

**(1)DENYING MOTION TO REMAND and**

**(2)OVERRULING PLAINTIFF & DEFENDANT'S EVIDENTIARY OBJECTIONS**

**[ECF Nos. 8, 10, 12]**

## I. INTRODUCTION

Plaintiff Gregorio Nuguid, an individual ("Plaintiff"), brings this Lemon Law action against Defendant Mercedes-Benz, LLC, a Delaware limited liability company ("Defendant"), pursuant to California's Song-Beverly Act, CAL. CIV. CODE § 1790 *et seq*. *See* Complaint, ECF No. 1-2 ("Compl.") at 4.[1]

Before the Court is Plaintiff's Motion to Remand (the "Motion").  ECF No. 8.  The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule

---

[1]     Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

-1-

7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 10.  After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES** Plaintiff's Motion.

## II.   BACKGROUND[2]

### A.   Statement of Facts

On November 26, 2019, Plaintiff purchased a new 2019 Mercedes-Benz GLA from Mercedes-Benz Temecula, which was manufactured by Defendant and had 16 miles on the odometer ("the Vehicle").  Compl. at 5, ¶ 4; *see also* ECF No. 9-2 at 2, Retail Installment Sale Contract—Simple Finance Charge (the "RISC").  Plaintiff agreed to pay $46,071.36 over the course of the loan term for the Subject Vehicle (71 payments of $639.88).  *See* RISC.  He alleges the Vehicle had several defects that substantially impaired its use, value,[3] or safety and violated both an express written warranty as well as the implied warranty of merchantability.  Compl. at ¶¶ 6 & 21.  He further alleges Defendant and its representatives failed to service or repair these defects, causing "damages in a sum to be proven at trial but not less than $25,000.00."  *Id.* at 3, ¶¶ 7, 8, 9.  Finally, Plaintiff pleads that Defendant's failure to comply with the Song-Beverly Act and its common-law duties constitutes an unlawful business practice under California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 *et seq.* (the "UCL").  *Id.* at ¶ 24.

### B.   Procedural History

On February 8, 2021, Plaintiff sued in the San Diego Superior Court, alleging state law-based violations by Defendant, including but not limited to the following: (1) failure to repurchase or replace a defective product, CAL. CIV. CODE § 1793.2(d); (2) failure to complete repairs on a defective product within 30 days, *id.* at § 1793.2(b); (3) breach of

---

[2]   The majority of the facts set forth are taken from the operative complaint, and for purposes of ruling on Defendants' motion to remand, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[3]   Notably, Plaintiff never alleges the Vehicle's purchase price in his complaint.  *See generally* Compl.

1  the implied warranty of merchantability, *id.* at §§ 1791.1 and 1794; and (4) violation of
2  California's UCL.  *See generally* Compl.

3      On March 11, 2021, Defendant timely removed the case to this Court.  Notice of
4  Removal, ECF No. 1 ("NOR"); *see also* 28 U.S.C. § 1446(b)(1), (c)(1).  On April 26, 2021,
5  Plaintiff filed the instant motion to remand.  Motion, ECF No. 8-3 ("Mot.").  On May 24,
6  2021, Defendant opposed.  *See* Opposition, ECF No. 9 ("Oppo.").  On June 14, 2021,
7  Plaintiff replied.  *See* Reply, ECF No. 12 ("Reply").

8  **III.  <u>LEGAL STANDARD</u>**

9      Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*
10  *of Am.*, 511 U.S. 375, 377 (1994).  Generally, federal subject matter jurisdiction exists due
11  to the presence of a federal question, *see* 28 U.S.C. § 1331, or complete diversity between
12  the parties, *see* 28 U.S.C. § 1332.  In cases arising out of diversity jurisdiction, section 1331
13  vests district courts with "original jurisdiction of all civil actions where the matter in
14  controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is
15  between . . . citizens of different States."  28 U.S.C. § 1331(a)(1).

16      While a plaintiff is the master of his or her complaint and may choose where to file
17  suit, removal qualifies as "an important check on the plaintiff's mastery."  *Polo v.*
18  *Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).  When a plaintiff files a civil
19  action in state court, a defendant in that case may remove it to federal court so long as the
20  case could have originally been filed in federal court, either due to the existence of federal
21  question or diversity jurisdiction.  28 U.S.C. § 1441(a); *City of Chi. v. Int'l Coll. Of*
22  *Surgeons*, 522 U.S. 156, 163 (1997).  However, removing a case does not deprive another
23  party "of his right to move to remand the case."  28 U.S.C. § 1448.

24      Courts strictly construe the removal statutes, rejecting removal jurisdiction in favor
25  of remand to the state court if any doubts as to the right of removal exist.  *Nev. v. Bank of*
26  *Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012).  The district court must remand the case "[i]f
27  at any time before final judgment it appears that the district court lacks subject matter
28  jurisdiction."  28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th

Cir. 2014); *Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary").  The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence.  *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010).

Courts evaluate the existence of diversity jurisdiction—including but not limited to the existence of diversity of citizenship and satisfaction of the amount in controversy—at the time of removal.  *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1000-01 (C.D. Cal. 2002).  The frame of reference when ruling on a motion to remand to state court is the four corners of the operative complaint at the time of removal. *Gracier v. Edwards Dental Supply Co.*, 86 F. Supp. 956, 957-58 (N.D. Cal. 1949) (citing 28 U.S.C. § 1447(c); *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 308 U.S. 283 (1939)).

## IV.   DISCUSSION

Plaintiff filed suit under California's "Song-Beverly Act, also referred to as the Lemon Law, [which] stipulates a vehicle manufacturer's obligations to maintain repair facilities, to repair vehicles to conform to applicable warranties, and to repurchase or replace vehicles that cannot be conformed to applicable warranties."  *Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F. Supp. 2d 1218, 1220-21 (S.D. Cal. 2008) (Sabraw, J.). Defendant removed the case pursuant to 28 U.S.C. Sections 1332 and 1446, alleging removal based on allegations of complete diversity jurisdiction and satisfaction of the amount in controversy.  NOR, 3, ¶ 9, 5, ¶ 21.  In his Motion, however, Plaintiff argues Defendant failed to show the diversity of citizenship and amount in controversy requirements have been met, requiring remand to the North County Division of the San Diego Superior Court.  *See generally* Mot. To support diversity of citizenship and the amount in controversy, Defendant provided a copy of the RISC, which contained an address for the Plaintiff located in Temecula, California as well as the total sale price of the Vehicle in the amount of $46,071.36.  *See* RISC.  Defendant argues this adequately establishes the Court's diversity jurisdiction over this case.  *See generally* Oppo.  Plaintiff,

however, seeks to remand not by arguing that diversity jurisdiction does not, in fact, exist but rather by attacking the sufficiency of Defendant's evidence proving it exists. First, Plaintiff argues Defendant failed to show the alleged amount in controversy exceeds the $75,000 required for removal.  Mot. at 1:20-26.   Next, Plaintiff argues Defendant's allegation that diversity of citizenship is met solely because Plaintiff purchased the car in California is insufficient. *Id.* at 12:4-8. Plaintiff also objects to Defendant's attempt to establish diversity by attaching the Declaration of Soheyl Talsidoost in Support of Defendant's Notice of Removal.  Mot. at 2.   Plaintiff contends the Court should not consider this document when evaluating the Motion to Remand because (1) Defendant's attorney does not have the requisite knowledge or foundation to make the assertion and (2) it violates several evidentiary rules. *Id.*

The Court recently addressed a motion advancing identical arguments filed by the same plaintiffs' counsel in *Canesco v. Ford Motor Co.*, No. 3:21-cv-00425-BEN-RBB, 2021 WL 5122231 (S.D. Cal. Nov. 4, 2021).  Accordingly, the Court adopts its analysis in that case and incorporates it herein by rejecting Plaintiff's arguments that the Court should not consider civil penalties or attorney's fees in its calculation of the amount in controversy. As outlined below, a review of the evidence provided by Defendant, when applying the relevant law, shows Defendant has proven diversity jurisdiction exists over this matter by a preponderance of the evidence.  Thus, the Court **DENIES** Plaintiff's Motion.  However, before proceeding, because the Court finds the existence of diversity jurisdiction only by analyzing the evidence, the Court must first address both parties' evidentiary objections.

### A.   Evidentiary Objections

Plaintiff submitted evidentiary objections to (1) Defendant's response letter to Plaintiff's vehicle repurchase request—used to demonstrate Plaintiff's address—and (2) an article by CAR AND DRIVER that Defendant submitted in support of its Notice of Removal. *See* Mot. at 2-3. Defendant raised its own evidentiary objections to paragraphs three and four of the Declaration of Amy L. Hirsch in Support of the Motion to Remand ("Hirsch Decl.").  ECF No. 10 at 2.  Finally, Plaintiff's reply objects to Defendant's inclusion of the

RISC and the declaration of Plaintiff's attorney regarding his attorneys' fees in a prior case. ECF No. 12-2 at 2-3.

This Court has recently ruled on evidentiary objections advancing identical arguments by the same plaintiffs' counsel against the submission of the RISC and documents to demonstrate the plaintiff's residence. *See Canesco*, 2021 WL 5122231, at *3-4. Accordingly, the Court adopts its analysis in that case and incorporates it herein by **OVERRULING** Plaintiff's evidentiary objections concerning that evidence. However, this Court will address Plaintiff's novel evidentiary objections to an article demonstrating a vehicle's purchase price and the prior declaration of Plaintiff's attorney as well as Defendant's evidentiary objections.

In evaluating the existence of diversity jurisdiction on a motion to remand, courts "consider . . . summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018). "An affidavit or declaration used to support or oppose a motion [for summary judgment] must ... set out facts that *would be* [but not necessarily are] *admissible* in evidence...." FED. R. CIV. P. 56(c)(4) (*emphasis* added). Thus, "when evidence is not presented in an admissible form in the context of a motion for summary judgment, *but it may be presented in an admissible form at trial*, a court may still consider that evidence." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (emphasis in original) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

The Court is mindful of the Ninth Circuit's warning that "[d]efects in evidence submitted in opposition to a motion for a summary judgment are waived 'absent a motion to strike or other objection.'" *FDIC v. N.H. Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (quoting *Scharf v. U.S. Att'y Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979)). However, "attorneys routinely raise every objection imaginable without regard to whether the objections are necessary, or even useful." *Burch*, 433 F. Supp. 2d at 1119. "For example, objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary

judgment standard itself; yet attorneys insist on using evidentiary objections as a vehicle for raising this point." *Id.* (noting that "[a] court can award summary judgment only when there is no genuine dispute of *material* fact," meaning that "[i]t cannot rely on irrelevant facts, and thus relevance objections are redundant").   "Additionally, objections to the *form* in which the evidence is presented are particularly misguided where, as here, they target the non-moving party's evidence."   *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c)").

Here, Plaintiff objected to Defendant's inclusion of a magazine article demonstrating the lowest possible purchase price for the make and model of the Vehicle.  *See* NOR, Ex. C.  Plaintiff objected on the grounds that the article (1) should be excluded under Federal Rules of Evidence ("FRE") 403; (2) lacks foundation under FRE 602; (3) is argumentative under FRE 611; (4) lacks authentication under FRE 901; (5) is irrelevant under FRE 401; (6) is speculative under FRE 602; and (7) constitutes hearsay under FRE 802.  *Id.*  It is unnecessary for the Court to consider this article in its analysis because, in its Opposition to Plaintiff's Motion to Remand, Defendant submitted the RISC, which displays the Vehicle's actual purchase price.  Therefore, this evidentiary objection is **OVERRULED** as moot given the Court does not rely on the article in determining the Vehicle's purchase price.  *See Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214 (9th Cir. 2009) (holding "that an issue is moot when deciding it would have no effect within the confines of the case itself").

Plaintiff also objected to the Declaration of Soheyl Tahsildoost in Support of Defendant's Opposition ("Tahsildoost Decl.") discussing Exhibit D and Exhibit D itself. ECF No. 12-2 at 3.  The Declaration as well as Exhibit D describe prior attorneys' fees sought or awarded to Plaintiff's counsel.  *See* Tahsildoost Decl. & Ex. D.  Plaintiff objected to the Tahsildoost Declaration regarding Exhibit D on several grounds by arguing that the Court should exclude it (1) as irrelevant under FRE 403; (2) lacking foundation under FRE 602; (3) argumentative under FRE 611; (4) lacking authentication under FRE 901(a); (5) speculative under 602; and (6) as hearsay under FRE 802.  ECF No. 12-2 at 3.  Plaintiff

also objected to Exhibit D itself on the grounds that it (1) should be excluded under FRE 403; (2) lacks foundation under FRE 602; (3) is argumentative under FRE 611; (4) is improper characterization under FRE 404; (5) lacks authentication under FRE 901(a); (6) is irrelevant under FRE 401; and (7) is hearsay under FRE 802. *Id.* As explained later, it is unnecessary for the Court to consider attorneys' fees in order to reach a conclusion regarding the amount in controversy. Therefore, the Court will not consider Exhibit D in its analysis, and these objections are **OVERRULED**.

Defendant raised its own evidentiary objections. First, Defendant objected to paragraph three of the Hirsch Declaration regarding attorneys' fees. ECF No. 10 at 2. Defendant asserted this evidence is inadmissible because it (1) is irrelevant under FRE 401 and FRE 402 and (2) should be excluded under FRE 403. *Id.* As stated above, the Court does not consider attorneys' fees in its analysis, and thus, will not consider the evidence regarding attorneys' fees to which Defendant objects. Therefore, this objection is also **OVERRULED**.

Second, Defendant objects to the Hirsch Declaration regarding Plaintiff's offer to compromise with Defendant, which Plaintiff claims was "for well below $75,000." ECF No. 10 at 2. Defendant argues the Court should not consider this declaration because it (1) is irrelevant under FRE 401 and FRE 402; (2) should be excluded under FRE 403; (3) is "inadmissible to prove or disprove the validity or amount of a disputed claim" under FRE 408; (4) is hearsay under FRE 801; and (5) is hearsay within hearsay under FRE 805. *Id.* However, the Ninth Circuit has found such offers to compromise admissible in determining the amount in controversy. *See Cohn v. Petsmart, Inc*., 281 F.3d 837, 840 (9th Cir. 2002) (holding "[a] settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."). At the same time, the Ninth Circuit also noted that a settlement letter is not determinative of the amount in controversy. *Id.* (citing *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994)). Therefore, the Court **OVERRULES** this objection and will consider this evidence but only as one factor in its amount in controversy analysis.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## B.   Diversity of Citizenship

District courts are presumed to lack jurisdiction unless the Constitution or a statute expressly provides otherwise.  *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).   Such "a 'presumption' can be rebutted only by contrary evidence." *Godoy v. Spearman*, 861 F.3d 956, 965 (9th Cir. 2017); *see also* FED. R. EVID. 301 (providing that "[i]n a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption").   Section 1332(a)(1) of Title 28 is such a statute that "provides otherwise," by creating for federal jurisdiction over a case between citizens of different states where the amount in controversy exceeds $75,000.00.

"[A] removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).   The Notice of Removal includes allegations that plausibly plead Defendant is a citizen of Delaware and Georgia, and Plaintiff is a citizen of California.   NOR at 2-3, ¶¶ 5-7.   The Court concludes as it did in *Canesco*, not only that it may take judicial notice of Plaintiff's address from the RISC but also that it may use that address to determine his residence and domicile unless and until Plaintiff proves a change of domicile.  *See Canesco*, 2021 WL 5122231, at *4-7.   The RISC lists Plaintiff's address as 32045 Camino Herencia, Temecula, California 9259, *see* RISC at 2, and Plaintiff not only pleads that Defendant is a Delaware corporation, *see* Compl. at 1, ¶ 2, but also does not dispute that Defendant is not a California resident, *see* Mot. at 17:1-17.   The RISC creates a presumption that Plaintiff qualifies as a California citizen, which Plaintiff failed to rebut.   Thus, this case is properly "between … citizens of different States," *see* 28 U.S.C. § 1332(a)(1), and the Motion to Remand cannot be sustained on this basis.   However, Defendant must also show satisfaction of the amount in controversy.

## C.   Amount in Controversy

Diversity jurisdiction also requires that "the matter in controversy ***exceeds*** the sum

-9-

or value of $75,000, <u>exclusive of interest and costs</u>" in order for a case to be removeable. 28 U.S.C. § 1332(a)(1) (emphasis added).  "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89 (noting "defendants may simply allege or assert that the jurisdictional threshold has been met").  Thus, when a defendant removes the case to federal court, "the defendant's amount-in-controversy should be accepted when not contested by the plaintiff." *Id.* at 87. However, "[e]vidence establishing the amount is required by § 1446(c)(2)(B) … when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 89.  Once a plaintiff challenges a defendant's allegations of removal jurisdiction, "§ 1446(c)(2)(B) instructs: '[r]emoval . . . is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.* at 88.  "[T]he defendant's showing on the amount in controversy may rely on reasonable assumptions." *Arias*, 936 F.3d at 922 (citing *Ibarra*, 775 F.3d at 1197-99).  Where a defendant presents proof of damages exceeding the amount in controversy, "it then becomes plaintiff's burden to show, as a matter of law, that it is certain he will not recover the jurisdictional amount."  *Kenneth Rothschild*, 199 F. Supp. 2d at 1001 (citing *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1411 (5th Cir. 1995)).

As with *Canesco*, the Complaint in this case—which is nearly identical with the exceptions of alterations to the names of the plaintiff, description of the vehicle, and date of purchase as it was prepared by the same counsel—also fails to make a facially plausible showing that the amount in controversy is met given its allegation that "Plaintiff suffered damages in a sum to be proven at trial but not less than $25,000.00."  Compl. at 6, ¶ 9. Even if the Court concludes, as it did in *Canesco*, that those damages do not include the civil penalties, which are twice the amount of actual damages, the amount in controversy would only meet but not exceed $75,000.00.  Thus, the Court analyzes whether the actual damages exceed the amount in controversy based upon the evidence in this case.

Plaintiff's Complaint did not allege the amount in controversy but seeks relief under

-10-

the Song-Beverly Act.  *See generally* Compl.  Plaintiff prays for the following damages: (1) actual damages in an amount "not less than $25,000"; (2) restitution; (3) a civil penalty in the amount of two times Plaintiff's actual damages pursuant to California Civil Code sections 1794(c) and (e); (4) any consequential and incidental damages; (5) costs of the suit and reasonable attorneys' fees pursuant to California Civil Code section 1794(d); and (6) prejudgment interest at the legal rate.[4]  Compl. at 6.  In its Notice of Removal, Defendant asserts that the amount in controversy was met based on a combination of the purchase price of the Vehicle and the civil penalty provided for in California Civil Code section 1794(c) and (e).  *See* NOR at 3-4, ¶ 10.  Defendant also contends that reasonable attorneys' fees are properly included in the amount in controversy.  *Id.* at 4-5, ¶ 12.  In asking the Court to remand this case, Plaintiff argues Defendant's calculations in the Notice of Removal fail to establish the amount in controversy because Defendant (1) uses civil penalties to establish the amount in controversy and (2) incorrectly argues that attorneys' fees are properly included in the amount in controversy. Mot. at 1:20-22. Plaintiff also contends that its prior settlement demand via Judicial Form 998 Offer to Compromise to Defendant demonstrates that the amount in controversy is not met because the Plaintiff was willing to settle for less than $75,000.  *Id.* at 9:20-25.

Because Plaintiff contests Defendant's alleged amount in controversy, this Court must review the evidence presented and decide if the amount in controversy exceeds $75,000 by "a preponderance of the evidence."  *Dart Cherokee*, 574 U.S. at 88 (citing §1446(c)(2)(B)).  As set forth below, the Court analyzes first, whether the allegations in the Complaint and Notice of Removal make it facially apparent that the amount in

---

[4]   Although Plaintiff's Complaint seeks recovery of prejudgment interest, the Notice of Removal does not plead that the Court must consider such interest to meet the amount in controversy, *see* NOR at 3-5, and neither party advances argument on this issue.  Thus, the Court does not include the unknown amounts potentially recoverable for prejudgment interest in its calculations of the amount in controversy.  *See also Zomorodian v. BMW of N. Am., LLC*, No. 2:cv-175061-DMGPLAX, 2019 WL 6534513, at *10 (C.D. Cal. July 23, 2019) (concluding "that prejudgment interest is unwarranted in this case").

controversy has been satisfied.  Because the allegations of the Complaint do not make it facially apparent the amount in controversy is satisfied based on damages alone, the Court analyzes the evidence, including the RISC, under the preponderance of the evidence standard.  Upon doing so, the Court finds the amount in controversy satisfied.  Thus, the Court **DENIES** Plaintiff's Motion to Remand.

### 1. <u>*The Amount in Controversy Is Not Facially Apparent from the Complaint*</u>

"Where the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of evidence that the amount in controversy" requirement satisfied.  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).  "This burden can easily be met if it is facially apparent from the allegations in the complaint that plaintiff's claims exceed $75,000" even if not total dollar amount is alleged.  *Kenneth Rothschild*, 199 F. Supp. 2d at 1001.

"Damages recoverable under the Song-Beverly Act include  restitution,  incidental and consequential damages, attorneys' fees and costs, and, if there has been a 'willful' violation of the Act, a civil penalty."  *Ortega*, 572 F. Supp. 2d at 1221.  Plaintiff seeks all of the aforementioned damages.  *See* Compl. at 6.  These damages, and their legal basis for recovery are outlined below:

| Damages Sought: | Basis: | Calculation: |
|---|---|---|
| Actual Damages Not Less Than $25,000.00.  S*ee* CAL. CIV. CODE § 1794(b)(1); *see also* CAL. COMM. CODE §§ 2711(1), 2712, 2713(1). | Compl. at 3, ¶ 9. | $25,000.00 |
| Restitution.  CAL. CIV. CODE § 1793.2(d)(1)-(2)(B); CAL. CIV. CODE § 1790.4. | Compl. at 6 ¶ B | No amount pled |
| Civil Penalty in an Amount of Two Times Actual Damages.  CAL. CIV. CODE § 1794(c). | Compl. at 6, ¶ C. | $50,000.00 |
| **Subtotal:** | | **$75,000.00** |
| Reasonable Attorney's Fees and Costs.  *See* CAL. CIV. CODE § 1794 (d), (e)(1). | Compl. at 6, ¶ E. | No amount pled |
| Prejudgment Interest at the Legal Rate.  *See, e.g.*, CAL. CIV. CODE § 3287(b). | Compl. at 6, ¶ F. | No amount pled |
| **TOTAL:** | | **$75,000.00** |

As shown above, Plaintiff's Complaint states that he "suffered damages in a sum to

be proven at trial ***but not less than*** $25,000.00." Copml. at 3, ¶ 9 (emphasis added).  He does not specify whether the damages that will exceed $25,000.00 include the restitution, civil penalties, attorney's fees, and costs or whether those amounts are in addition to the $25,000.00.  *See generally* Compl.  Other courts have found such vague allegations as too speculative to find the amount in controversy satisfied.  *See, e.g.*, *Mullin v. FCA US, LLC*, No. CV 20-2061-RSWL-PJW2020 U.S. Dist. LEXIS 86026, 2020 WL 2509081, at *1, 3 (C.D. Cal. May 14, 2020) (denying remand after finding "that the allegations in Plaintiff's Complaint do not make clear whether he is seeking more than $25,001.00 in actual damages or total damages").  As in *Canesco*, the Plaintiff's allegations in the Complaint, on their face, fail to support remand for the reasons outlined in that case.[5]  *Canesco*, 2021 WL 5122231, at *8-9.  Most notably, a recent court faced with similar allegations that did not make it facially apparent the amount in controversy had been established continued onward to evaluate whether the evidence outside of the complaint satisfied the amount in controversy.  *See, e.g.*, *Carillo v. FCA USA, LLC*, --- F. Supp. 3d ---, No. 2:21-cv-01229-CASJ-EMX, 2021 U.S. Dist. LEXIS 123599, 2021 WL 2711138, at *4 (C.D. Cal. June 29, 2021) ("[B]ecause the amount in controversy is unclear from the face of plaintiff's complaint, [which alleged damages in an amount not less than $25,001.00], the Court must determine whether defendants have met their burden to demonstrate by a preponderance of the evidence that the amount in controversy is greater than $75,000").

In sum, even if the Court assumed that Plaintiff's allegations of actual damages of "not less than $25,000.00" did not include civil penalties, those civil penalties of twice the amount of actual damages (*i.e.*, $25,000.00) potentially add $50,000.00, resulting in amount of controversy of $75,000.00.  Consequently, based on the Complaint alone, this case is one dollar too low because it does not appear to ***exceed*** "$75,000, exclusive of

[5]  As this Court noted in *Canesco*, the issue of whether federal diversity jurisdiction exists would be clearer had the complaint pled "Plaintiff suffered damages, including but not limited to penalties, pre-judgment interests, post-judgment interest, attorney's fees, and costs, in a sum to be proven at trial but not greater than $75,000.00."  2021 WL 5122231, at *9 n.6.  In that case, the amount in controversy would not be met.

interests and costs." *See* 28 U.S.C. § 1332(a)(1).  Thus, like the *Carillo* court, the Court continues onward and analyzes whether the amount in controversy has been satisfied under the preponderance of the evidence test.  2021 WL 2711138, at *4.

**2.** **<u>The Amount in Controversy is Shown by the Preponderance of the Evidence</u>**

"If the amount in controversy is not clear on the face of the complaint," as is the case here, the "defendant must do more than point to a state law that might allow recovery above the jurisdictional minimum."  *Kenneth Rothschild*, 199 F. Supp. 2d at 1001.  Instead, as with citizenship, that removing "defendant must submit 'summary-judgment-type evidence' to establish that the actual amount in controversy exceeds $75,000."  *Id.* (quoting *Easley v. Pace Concerts, Inc.*, No. CIV. A. 98–2220, 1999 WL 649632, * 3 (E.D. La. Aug. 25, 1999)); *see also Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (noting that in determining the amount in controversy, courts examine not only the facts alleged in the complaint—which are assumed true for purposes of calculating the amount in controversy—but also "summary judgment type evidence relevant to the amount in controversy at the time of removal").

With the face of the Complaint insufficient, Defendant must prove that Plaintiff may be entitled to recover, actual damages, restitution, civil penalties, and attorney's fees.

a.   *Actual damages*

In terms of the actual damages Plaintiff seeks in this lemon law case, California courts have construed section 1794 of the Act as providing buyers with "compensatory damages for breach of [a seller's] contract."  *Bishop v. Hyundai Motor Am.*, 44 Cal. App. 4th 750, 755 (1996), *as modified* (Apr. 17, 1996) (quoting *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal. App. 4th 174, 188).  In other words, California limits plaintiffs who file suit under the Song-Beverly Act to breach of contract damages.  *See, e.g.*, *Bishop*, 44 Cal. App. 4th at 758 (reversing an award of emotional distress damages to a plaintiff who filed suit under the Song-Beverly Act because such damages may not be recovered in a breach of contract action).  Such breach of contract damages under the Song-Beverly Act, can include compensatory damages, incidental damages, consequential damages, and

-14-

restitution.   *See* CAL. CIV. CODE §§ 1793.2, 1794; *see also* CAL. CIV. CODE § 1790.4 (providing that "[t]he remedies provided by this chapter are cumulative and shall not be construed as restricting any remedy that is otherwise available").[6]

Pryor, *supra* 40 Pepp. L. Rev. at 882 n.301.

In this case, Plaintiff's expectation interest ends up being approximately the same as his reliance and restitutionary interest as they all require reimbursement of all amounts paid to Defendant (*i.e.*, the purchase price, financing amounts, etc.) as well as reimbursement for incidental and consequential damages.   The Court analyzes the relevant contract interests, finding that none prove an amount in excess of amount in controversy.   Further, restitution in lemon law cases requires calculation of the "mileage" or "use" offset set out by statute.   Thus, the Court analyzes Plaintiff's restitutionary interest separately.

i.   Contract damages

California Civil Code section 1794 ("Section 1794") establishes the measure of damage for the breach of an implied or express warranty arising out of a contract for consumer goods.   It provides that the buyer's damages include the rights of replacement *or* reimbursement set forth in subdivision (d) of Section 1793.2 of the Civil Code *along with* additional damages depending on whether the buyer rightfully rejected, revoked acceptance, or accepted the goods.   CAL. CIV. CODE § 1794(b).   In this case, Plaintiff seeks "actual damages" under two of its provisions.

First, "Plaintiff seeks the remedies provided in California Civil Code section 1794(b)(1), including the entire purchase price."   Compl. at 7, ¶ 16.   Under this provision, "[w]here the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial

---

[6]   As the Court noted in *Canesco*, "[m]any courts blur the distinction between actual (compensatory damages) and restitution."   2021 WL 5122231, at *10 n.7.   However, restitution merely represents a form of damages available to a plaintiff where the expectation and reliance measures of damages prove inadequate.   Restatement (Second) Contracts, § 344) ("Restitution measures the damages of the aggrieved party when it is unable to establish expectation damages and has no provable reliance damages.").

-15-

Code shall apply." CAL. CIV. CODE § 1794(b)(1); *see also* CAL. COMM. CODE § 2711(1) (providing that if the buyer rightfully rejects or revokes acceptance, the buyer may cancel and "in addition to recovering much of the price as has been paid" (a) cover, as provided in section 2712, and (b) recover damages for nondelivery, as provided in section 2713[7]). Under Section 2712 of the Commercial Code, Plaintiff would have, in addition to his right to recover the purchase price, the right to "cover," or purchase substitute goods without unreasonable delay and recover as damages the difference between the cost of cover and the contract price plus any incidental or consequential damages minus expenses saved in consequence of the breach. CAL. COMM. CODE § 2712. However, Plaintiff does not allege he purchased a replacement Vehicle, and thus, he would not be entitled to the cost of cover, only the "entire purchase price" of his original Vehicle. *See* Compl. at 7, ¶ 16.

The purchase price of the Vehicle includes the total sale price (regardless of whether amounts owed under an installment contract have been paid yet), including but not limited to amounts for taxes, registration, fees, and financing fees, but excluding negative equity in a trade-in vehicle and any amounts relating to non-manufacturer-installed items. *See Canesco*, 2021 WL 5122231, at *11; *see also* CAL. CIV. CODE § 1793.2(d) (2)(B); *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 814 (2006). As in *Canesco*, both parties discuss a purchase price ($46,071.36) without explaining (1) whether that purchase price includes improper items or (2) whether Plaintiff may recover for amounts on the outstanding loan balance. *Compare* Mot. at 6:22-24 ("Furthermore, MBZ itself attests in its evidence that Plaintiff's actual damages may be as low as $34,950.00, which is well below the jurisdictional threshold.") *with* Oppo. at 8:4-5 ("According to the sales contract, the total price paid or payable for the Subject Vehicle is $46,071.36.") (citing (Ex. A to ST Decl.) *with* Reply at 5:23-25 ("Defendant concedes that it calculates the actual damages to be merely approximately $46,071.36.").

---

[7]   Because there are no allegations of nondelivery (*i.e.*, that Plaintiff did not receive the Vehicle), only that the Vehicle received was defective, the Court finds this provision inapplicable.

With respect to the recoverable purchase price, the RISC between Plaintiff and Defendant indicates the agreed-upon total sale price of the Vehicle was $46,071.36.  *See* RISC. Thus, seemingly this amount, when added to any civil penalties, should satisfy the amount in controversy.  However, the Court finds that the purchase price argued by the parties is improper for several reasons.

In this case, under the RISC, of which the Court has taken judicial notice, Plaintiff's "purchase price" broke down as follows:

| Item: | Amount: |
|---|---|
| **Cash Price of the Vehicle:** | $36,285.00 |
| | |
| **Additional Charges:** | |
| **Sales Tax:** | $3,182.38 |
| **Document Processing Charge:** | $85.00 |
| **EV Registration or Transfer Charge:** | $30.00 |
| **Prior Debt or Lease Balance Paid by Seller** | $2,934.71 |
| **Debt Cancellation Agreement[8]:** | $995.00 |
| **Subtotal:** | **$43,512.09** |
| | |
| **Vehicle License Fees** | $236.00 |
| **Registration Fees:** | $269.00 |
| **California Tire Fee** | $7.00 |
| **Subtotal:** | **$44,024.09** |
| | |
| **Value of Trade-In Vehicle:** | **$19,000.00** |
| **Previous Balance Under Trade-In Lease:** | **$21,934.71** |
| **Net Trade-In Value (Equity or Negative Equity[9]):** | **($2,934.71)** |

---

[8]    A debt cancellation agreement is not a "manufacturer-installed item," and thus, the Court suspects it may be improper to include this amount in the amount in controversy. The Court was unable to locate cases discussing this issue, but given the damages exceed the amount in controversy by more than $995.00, the inclusion or exclusion of this amount is not determinative of jurisdiction in this case.

[9]    In auto sales, equity is the difference between the value of a vehicle and loan balance on the vehicle.  *Rivera v. Ford Motor Co.*, No. 2:cv-18-07798-DSFP-JWX, 2020 WL

-17-

| Seller Payment of Lease Balance[10]: | $2,934.71 |
|---|---|
| Down Payment: | $0.00 |
| Adjusted Net Trade-In Value: | $0.00 |
| | |
| Amount Financed: | $44,024.09 |
| Finance Charge: | $2,047.27 |
| Total Purchase Price Under RISC: | $46,071.36 |

First, the Court finds that this purchase price must be reduced by Plaintiff's negative equity. Where a consumer has negative equity on a vehicle, as was the case here, "[c]ommon sense dictates that providing Plaintiffs with restitution—'status quo'—should again leave them with the [Vehicle] debt." *Rivera*, 2020 WL 1652534, at *4-5 (noting that "[r]equiring *Ford* to pay off *Plaintiffs'* old debt [more than $4,000 on their old PT Cruiser] would result in a windfall because Plaintiffs would receive damages beyond the purchase

---

1652534, at *4 (C.D. Cal. Feb. 10, 2020). "Buyers have *negative* equity when their auto loan is underwater—that is, when the vehicle is worth less than the outstanding loan balance on it." *Id.* (citing *In re Penrod*, 611 F.3d 1158, 1159-60 (9th Cir. 2010)). Buyers are not entitled to recover negative equity as part of their "purchase price paid." *See, e.g.*, *Rivera*, 2020 WL 1652534, at *4-5 ("The Court agrees with and adopts the analysis of these district courts and holds that a manufacturer is not required to include negative equity in a repurchase offer under the Song-Beverly Act."). Here, Plaintiff traded in his 2018 Ford Mustang, which had a value of $19,000, but a prior lease balance of $21,934.71, resulting in a "Net Trade-In" value of -$2,934.71. RISC. In other words, Plaintiff had negative equity in his previous vehicle and may not recover that negative equity as part of his recoverable purchase price for the Vehicle in this case.

[10]    The seller paid off all of the outstanding loan balance of Plaintiff's previous car, which wiped out the negative equity in the previous vehicle. *See* RISC. Thus, $2,934.71 of the purchase price consisted of Plaintiff's negative equity and is not recoverable. *See Rivera*, 2020 WL 1652534, at *4 (subtracting the amount of negative equity [$4,814.11] from the total of payments made [$10,518.03], down payment (including trade-in) [$2,500.00], and mileage charges [$1,027.88] when calculating the refund owed to the customer). This serves the reliance and restitutionary interest by placing the consumer in the position he would have been in had he not entered into the instant transaction: $2,934.71 in debt but reimbursed for the $19,000 value of his previous vehicle, which he was supposed to (but did not) receive via trade-in value of the new Vehicle via the other damages recoverable in this case.

-18-

price of the new motor vehicle") (internal quotations omitted).  Negative equity is not part of the "new motor vehicle" price, so the manufacturer should not be required to reimburse the buyer for their cost.  *Id.* at *5 (stating that "negative equity stems from a loan on a *different* vehicle made by a *different* manufacturer; it is not a component of the 'new motor vehicle' price and therefore need not be reimbursed").  Thus, the Vehicle purchase price used by the parties of $46,071.36 must be reduced by the $2,934.71 in negative equity as shown below:

| Amount: | Item: |
|---|---|
| $46,071.36 | (Total Purchase Price Under RISC) |
| - $ 2,934.71 = | (Payments Made by Seller Towards Negative Equity) |
| **$43,136.65** | **(Recoverable Purchase Price)** |

Second, Plaintiff agreed to pay $46,071.36 over the course of the loan term for the Vehicle (71 payments of $639.88).  RISC.  His monthly payments of $639.88 per month began on January 8, 2020, and would have continued through December 8, 2025. RISC. Plaintiff filed suit approximately thirteen months after payments began, on February 8, 2021, and thus, the Court reasonably infers that at the time of filing, he had paid $8,318.44 out of pocket.  This leaves two options for evaluating the purchase: (1) the amounts paid out of pocket to date or (2) the adjusted purchase price that excludes negative equity.  As shown below, the amount used determines whether the amount in controversy is satisfied:

| | | Amounts Paid to Date: | Adjusted Purchase Price: |
|---|---|---|---|
| Actual Damages Not Less Than $25,000.00. | Purchase Price: | $8,318.44 | $43,136.65 |
| | Subtotal: | **$8,318.44** | **$43,136.65** |
| Civil Penalty in an Amount of Two Times Plaintiff's Actual Damages. | | $16,636.88 | $86,273.30 |
| TOTAL: | | **$24,955.32** | **$129,409.95** |

As the Court concluded in *Canesco*, however, return to status quo must include paying off the loan balance.  *Canesco*, 2021 WL 5122231, at *14.  If it did not, the consumer would have his or her down payment and monthly payments returned but be left with a loan that still needed to be repaid, which would not put the consumer in the position

-19-

he or she was in before buying the Vehicle.  *But see Pizano v. FCA US LLC*, No. 2:21-cv-06193-RGK-MAA, 2021 U.S. Dist. LEXIS 148058, at *2-3 (C.D. Cal. Aug. 6, 2021) (remanding to the superior court after finding the defendant failed to plausibly allege the amount in controversy because the RISC indicated the plaintiffs paid only $6,000.00 as a down payment with remaining balance to be paid over six years, so "[w]ith $6,000.00 as a starting point, the Court [found] it implausible that the amount in controversy exceeds $75,000").

Of course, the amounts for the loan payoff can either be repaid directly to the lender or to the buyer, who must repay the lender.  Here, Defendant is the manufacturer of the Vehicle, *see* Compl. at 2, ¶ 4, but the lender appears to be Mercedes-Benz of Temecula. *see* RISC.  Thus, it does not appear that the named defendant could reduce the purchase price paid by any offset for the outstanding loan balance because the named defendant is not the lender.   Even if an offset was allowed for outstanding amounts owed on the loan under the law, it cannot be used here.

Third, Plaintiff "seeks the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects," stating that he "believes that, at the present time, the Vehicle's value is de minimis." Compl. at 4, ¶ 16.  Under this provision, if the buyer accepts the allegedly defective vehicle, "Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform."  CAL. CIV. CODE § 1794(b)(2).  Section 2714 of the Commercial Code addresses a buyer's damages for breach of a contract with respect to accepted goods.  It provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted."  CAL. COMM. CODE § 2714(2).  It also authorizes incidental and consequential damages pursuant to section 2715 of the Commercial Code.[11]

---

[11]    Defendant's Notice of Removal states that the amount in controversy is satisfied in this case "without considering any incidental or consequential damages...."  NOR at 3, ¶

1   Plaintiff states in his Complaint, that the Vehicle's value is *de minimis*.  As in
2   *Canesco*, the Court notes that because Plaintiff alleges the Vehicle's value is *de minimis*,
3   even under this alternative measure of damages, his damages would still likely satisfy the
4   amount in controversy given the Vehicle's purchase price.  *Canesco*, 2021 WL 5122231,
5   at *14-15.  In this case, this alternative measure of damages for diminution in value would
6   still be around $40,000, which as discussed below, when added to civil penalties, would
7   triple, making the actual damages alone rise above the amount in controversy.

8   Therefore, based on a preponderance of the evidence provided by both Plaintiff and
9   Defendant, it is clear "the estimate of the total amount in dispute" for contract damages
10  exceeds $75,000.

11  ii.   Restitution

12  Plaintiff's alleged actual damages include restitution for the entire purchase price of
13  the Vehicle pursuant to Section 1794(b)(1).  *See* Compl. at 8, ¶ 16.  Section 1794(b)(1)
14  provides that "[t]he measure of the buyer's damages in an action shall include the rights of
15  replacement *or* reimbursement as set forth in subdivision (d) of the Section 1793.2."  CAL.
16  CIV. CODE § 1794(b)(1) (emphasis added).  Section 1793.2 of the Civil Code ("Section
17  1793.2"), in turn, provides that where a manufacturer "is unable to service or repair a new
18  motor vehicle . . . to conform to the applicable express warranties after a reasonable number
19  of attempts, the manufacturer shall make restitution to the buyer."  CAL. CIV. CODE §
20  1793.2(d)(2)(B).  The measure of damages for such restitution is the "amount equal to the
21  purchase price paid by the buyer, less that amount directly attributable to use by the buyer
22  prior to the discovery of the nonconformity."  *See* CAL. CIV. CODE § 1793.2(d)(1).

23  Often referred to as the "use offset," the Song Beverly Act provides for the
24  restitutionary statutory repurchase price of a vehicle to be "reduced by … that amount
25  directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle
26  to the manufacturer or distributor."  CAL. CIV. CODE § 1793.2(d)(2)(C). However, neither

27
28  10.  Thus, the Court does not address incidental and consequential damages.

-21-

party supplies the information necessary to calculate the use offset.  *See generally* Mot. Other courts faced with the same absence of information regarding the use offset have noted that the use offset is not mandatory but rather applies at the manufacturer's option. *See Wickstrum*, 2021 WL 532257, at *2.   Therefore, where the Court receives no information regarding its application, it will not assume its application. *Id.*[12]

### b.  *Civil penalties*

Civil penalties are where the rubber meets the road in Lemon Law cases, as they potentially triple the plaintiff's damages.  Plaintiff argues that the Court should not consider civil penalties because (1) they are speculative, (2) they are improperly included in the amount in controversy, and (3) Defendant argues against them.  Mot. at 5-6.  Defendant responds that not only is it well-established that civil penalties should be considered when calculating the amount in controversy, but based on the statutory repurchase price ($46,071.36), the potential civil penalties ($92,142.72) bring the amount in controversy to $138,214.08, which well exceeds the required $75,001.00 amount in controversy.  Oppo. at 7:16-8:12.

Again, the Court incorporates its analysis from *Canesco*, in which it analyzed why civil penalties are included when calculating the amount in controversy.   2021 WL 5122231, at *19-20.   Thus, because Plaintiff alleges Defendant will owe "a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (e)," *see* Compl. at 3, ¶ 10, the Court considers those civil penalties. *See, e.g.*, *Brady*, 243 F. Supp. 2d at 1010 (explaining that the two-time civil penalty provided by the Song-Beverly Act is properly included in the amount in controversy); *see also Park*, 2020 WL 3567275, at *3-4 (Bashant, J.) (noting "the Court also is persuaded by comparable decisions that consider the maximum amount of civil penalties because that is what has

---

[12]   Plaintiff's counsel filed a motion to remand in a different lemon-law case advancing similar arguments to the instant Motion.  *See Canesco*, 2021 WL 5122231, at *16-18. However, in *Canesco*, Plaintiff's counsel raised the issue that Defendant failed to account for statutory use offsets.  *Id.*  Because Plaintiff's counsel raised this issue in the past but does not do so here, the Court assumes Plaintiff intended to waive the issue.

1    been placed into controversy.").

2        Based on the statutory repurchase price in this case ($43,136.65), a two-time civil

3    penalty could potentially add $86,273.30.   Therefore, Plaintiff could be entitled to an

4    aggregate amount of $129,409.95.   This amount far exceeds the $75,000.00 jurisdictional

5    threshold.   Accordingly, the Court finds it unnecessary to consider the parties' arguments

6    as to whether the Court should consider attorneys' fees when calculating the amount in

7    controversy.[13]   *See, e.g.*, *Ha Nguyen*, 2021 WL 2411417, at *5 (noting that whether

8    attorney's fees should be included was a moot point because "the amount in controversy is

9    met by actual damages and the civil penalty alone"). Thus, this Court finds it unnecessary

10   to consider Defendant's request that the Court to take judicial notice of Exhibits E and F

11   attached to Defendant's Opposition to the Motion to Remand regarding Plaintiff's

12   attorneys' past attorneys' fees.   *See* Oppo, ECF No. 9, Attach. No. 6.

13                    b.   *Plaintiff's Settlement Offer*

14       Plaintiff notes that he presented a settlement offer via Judicial Form 998 Offer to

15   Compromise ("Settlement Offer") to Defendant on March 12, 2021. Hirsch Decl., ¶4. He

16   contends that the Settlement Offer demonstrates that the amount in controversy is not met

17   because it shows Plaintiff was willing to settle for "well below $75,000, inclusive of all

18   damages."   Mot. at 9:20-25.   However, other than the details provided in the Hirsch

19   Declaration, Plaintiff did not provide the actual Settlement Offer or any other evidence

20   thereof.   In response to Plaintiff's assertion regarding the Settlement Offer, Defendant

21   argues that the Settlement Offer does not demonstrate that the amount in controversy is

22   met because it is inadmissible under FRE 408.   Oppo. at 3:17-21.

23       As stated above, contrary to Defendant's argument, evidence of a settlement offer is

24   admissible in determining the amount in controversy.[14]   *See Cohn v. Petsmart, Inc.*, 281

25

26   [13]    That being said, the Court incorporates its analysis in *Canesco*, which found it well-
27   established that courts should consider attorney's fees recoverable by statute when
     calculating the amount in controversy. 2021 WL 5122231, *20 n.19; *Arias*, 936 F.3d at 922.
28   [14]    *See supra*, Section IV(A).

                                    -23-

F.3d 837, 840 (9th Cir. 2002).  However, the Ninth Circuit also noted that a settlement letter is not determinative of the amount in controversy, and therefore, the Court only considers the Settlement Offer as a factor in determining the amount in controversy.  *Id.* (citing *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994)).[15]  Here, because the Court has not had an opportunity to review the actual Settlement Offer or any other evidence of its terms, the Declaration of Amy Hirsch that Plaintiff offered to settle for less than the jurisdictional threshold is insufficient to overcome the preponderance of the evidence that the amount in controversy in this case exceeds $75,000.

Therefore, based on a preponderance of the evidence, "the estimate of the total amount in dispute" exceeds $75,000, and the amount in controversy requirement under 28 U.S.C. §1332(a)(1) has been satisfied.  *Lewis*, 627 F.3d at 400.

## D.   Comity

"The comity doctrine counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction."  *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 421 (2010).  It "reflects . . . a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions."  *Id.* (internal quotations omitted).  Plaintiff makes various arguments that comity warrants this Court remanding the case because it "exclusively involves matters of California law for a single recently purchased consumer vehicle."  Mot. at 12:27-28.  However, numerous courts have declined remand motions filed in the same types of cases, rejecting the same comity arguments.  *See, e.g.*, *Wickstrum*, 2021 WL 532257, at *3 (rejecting the same argument in a similar case brought under the Song-Beverly Act); *see also Park*, 2020 WL 3567275, at *6 (same).  Likewise, because the Court determines it possesses diversity jurisdiction over this action, it rejects Plaintiff's comity argument. *See, e.g., BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 793 n.2 (9th Cir. 2009) (Fisher, J., concurring) ("[D]istrict courts sitting in diversity ... lack the option of refusing state law claims out of consideration for

---

[15]   Plaintiff also recognizes the Settlement Offer is not determinative evidence of the amount in controversy. Mot. at 9:17-20.

person

'judicial economy, convenience, fairness, and comity'").

## V.   **CONCLUSION**

As set forth above, the Court finds that Defendant properly removed this case based on diversity jurisdiction as it satisfies both the diversity of citizenship and amount in controversy requirements. *See* 28 U.S.C. §1332. Therefore, the Court **DENIES** Plaintiff's Motion to Remand.  Additionally, the Court **OVERRULES** Plaintiff's and Defendant's Evidentiary Objections.

Finally, in light of the Court's finding of jurisdiction, it notes that Plaintiff has named Does 1 through 10 in this lawsuit.  Unlike California code pleading, the Federal Rules of Civil Procedure ("FRCP") neither authorize nor prohibit the use of fictitious parties; however, FRCP 10 does require a plaintiff to include the names of all parties in his complaint. *See Keavney v. Cty. of San Diego*, No. 319CV01947AJBBGS, 2020 WL 4192286, at *4-5 (S.D. Cal. July 21, 2020) (Battaglia, J.) (citing FED. R. CIV. P. 10(a)). Further, naming doe defendants implicates Rule 4 requiring service of the complaint. *Id.* (noting that "it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant"); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (same).  Where a plaintiff fails to link the alleged wrong or explain how any of the unidentified parties he sued personally caused a violation of his rights, the Court must dismiss those individuals, especially when they have not been served. *See, e.g.*, FED. R. CIV. P. 4(m) (noting that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").  Because the case remains in federal court, Plaintiff shall name and serve the doe defendants within forty-five (45) days or the doe defendants will be dismissed *without prejudice*.

**IT IS SO ORDERED.**

DATED:    November 17, 2021

_____
**HON. ROGER T. BENITEZ**
United States District Judge

-25-